IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Dr. Terrie Sizemore RN, DVM,

        Plaintiff,

v.

Heather Lynn Hissom, et al.,

        Defendants.

Case No. 2:12-cv-1166

Judge Graham

Magistrate Judge Abel

OPINION AND ORDER

This matter is before the Court on motions to dismiss filed by defendant Marc E. Meyers (doc. 15) and defendants Heather Hissom Coglianese, Marc Dann, Barry McKew, Thomas P. Charles, Bob Gibbs, Janet Small, Darrell Gitz, David Koncal, Renee Jessen, Theresa Stir, Tracy Manly, Aaron Epstein, Jennifer Adair, and Mindy Worly (doc. 16). Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief may be granted and Rule 12(b)(1) for lack of subject matter jurisdiction. For the reasons stated below, the motions to dismiss are granted.

**I.    Factual Background**

This case began eight years ago with veterinary care provided by plaintiff to two dogs. Since then, the parties have spun a procedural web between several Ohio courts. Plaintiff now seeks to start again in federal court.

In May of 2005, plaintiff, a licensed veterinarian, saw a dog for removal of a skin growth. Doc. 2 ¶ 31. "During the removal of the growth, Pete [the dog] experienced excessive bleeding for an unknown reason." Doc. 2 ¶ 32. Though plaintiff alleges that she conducted appropriate follow-up care, Pete died the day after the surgery. Doc. 2 ¶¶ 33-36. Pete's owners subsequently filed a

complaint with the Ohio Veterinary Medical Licensing Board ("OVMLB" or "the Board") regarding plaintiff's treatment of Pete and their other dog, Dutchess.  Doc. 2 ¶ 36.  The Board initiated an investigation and sent two investigators on separate visits to plaintiff's veterinary practice and requested information from plaintiff.  Doc. 2 ¶¶ 37-40.  Plaintiff alleges that these investigations concluded that "Plaintiff never violated any areas of the [Ohio Revised Code] or the [Ohio Administrative Code] in the execution of her job duties as a licensed veterinarian."  Doc. 2 ¶ 41.  Nonetheless, plaintiff alleges that defendants Heather Hissom Coglianese, Executive Secretary and Executive Director of the OVMLB, and Barry McKew, assistant attorney general "assigned as counsel to the OVMLB for allegations of misconduct against Plaintiff," ignored the conclusions of the investigation and filed charges against her without legal cause.  Doc. 2 ¶¶ 12, 14, 42.

A hearing on the charges brought against plaintiff by the Board was held on July 20, 2006.  Doc. 2 ¶ 43.  The hearing examiner, defendant Marc E. Myers, considered three accusations made by the Board against plaintiff, each related to the treatment of Pete and Dutchess:

> First, this Board alleges that Dr. Sizemore failed to provide the [owners of the dogs] with a rabies certificate for the rabies vaccination given to "Dutchess" on May 1, 2005, in violation of Ohio Adm. Code 4741-1-03(3)(6)(a).  Next this Board alleges that Dr. Sizemore's treatment record for Pete did not contain the amount of Valium and Ketamine administered on May 8, 2005, in violation of R.C. 4741.22(AA) and Ohio Adm. Code 4741-1-21(A) and (C).  Finally, this Board alleges that Dr. Sizemore failed to place a label on the Keflex she dispensed to Pete on May 8, 2005 in violation of Ohio Law.

Doc. 17-2 at 6.  Myers found that plaintiff was guilty of the first and second allegations, but not the third.  Doc. 17-2 at 7-8.  He recommended that she be ordered to pay a $250 civil penalty, plus the costs of the hearing.  Doc. 17-2 at 9.  On March 2, 2007, the Board adopted defendant Myers's finding that plaintiff was guilty of two of the three allegations against her, but ordered a larger penalty against plaintiff in the amount of $1,458.50.  Doc. 17-4 at 4.

Plaintiff appealed the Board's decision to the Franklin County Court of Common Pleas. Doc. 2 ¶ 49; doc. 15-2 ¶ 19. Plaintiff alleges that this appeal was dismissed for the "minor, insiginifant, trivial error" of signing two documents with different signatures. Doc. 2 ¶ 49. Plaintiff appealed the Court of Common Pleas dismissal to the Court of Appeals, which scheduled a mediation conference. Doc. 2 ¶¶ 54-55. At mediation, plaintiff and the Board agreed to vacate the prior dismissal and remand the case to the Board. Doc. 2 ¶ 55; doc. 15-2 ¶ 24. Plaintiff alleges that the charges were not dismissed until June 11, 2009, after she moved the Court of Common Pleas to vacate its prior decision dismissing her appeal. Doc. 2 ¶ 57.

Having secured the dismissal of the charges against her, plaintiff proceeded to file another lawsuit in the Franklin County Court of Common Pleas "alleging violations of 42 USC 1983 in substance." Doc. 2 ¶ 58. Defendants in this suit were 12 of the 15 defendants in the case at issue here.[1] See doc. 16-2 at 1. Plaintiff voluntarily withdrew the common pleas action on January 13, 2010. Doc. 2 ¶ 62, doc. 16-2 at 1.

Plaintiff's next suit was in the Ohio Court of Claims. There, she sought a determination of whether certain state employees (the complaint does not say which employees) were immune from suit. Doc. 2 ¶ 62. On August 23, 2010, the Court of Claims dismissed her action because the two-year statute of limitations for claims against the state had expired, and alternatively because her claims were a collateral attack on the OVLMB's actions against her. Doc. 16-4 at 2. The Tenth District Court of Appeals affirmed the Court of Claims's dismissal on May 12, 2011. Doc. 15-1.

Plaintiff next filed a mandamus action in the Tenth District Court of Appeals. Doc. 2 ¶ 64.

---

[1] The missing defendants, Aaron Epstein, Jennifer Adair, and Mindy Worly are attorneys from the office of the Ohio Attorney General who represented defendants in the common pleas or subsequent actions brought by plaintiff. See doc. 2 ¶ 23.

There she sought a writ compelling the OVMLB to re-issue its order of a civil penalty against her–the order for which the Board had subsequently decided to drop charges. Doc. 15-2 at 1. The Court of Appeals did not grant the writ: "Apparently Sizemore is discontented with the dismissal of the charges. Instead, she wants the adverse order, the order finding she had been guilty of misconduct, reissued. We do not believe that Sizemore has the right to compel a governmental agency to issue an order which the agency no longer feels is appropriate." Doc. 15-2 at 3.

Plaintiff subsequently filed this, her fourth lawsuit related to a penalty that the Board subsequently decided not to issue, on December 18, 2012. Plaintiff, proceeding pro se, characterizes the procedural history as follows: "The three-ring circus perpetuated by the Ohio Attorney General's office and the Defendants listed continued the pattern and practice of conduct that deprived this Plaintiff of her Federally protected rights. All parties participated in the acts being convinced this Plaintiff would never 'smarten up' enough to file this action in this Federal Court." Doc. 2 ¶ 67. Though the denial of federal rights is clearly at the heart of plaintiff's complaint, and the complaint contains legal terminology suggesting specific federal rights, plaintiff makes very few factual allegations regarding *what any individual defendant did* to deny her any identifiable federal right. In seeking to give a pro se plaintiff the benefit of the doubt, the Court has carefully identified the allegations that she does make against individual defendants. Most of these are general and conclusory.

For example, plaintiff makes a large number of allegations that "defendants" generally wronged her or violated some federal right. She alleges that "pertinent Defendant parties conspired to deprive her of her rights through an unlawful means-particularly fraud." Doc.2 ¶ 8. She generally alleges that "all attorneys listed as Defendants conducted the deprivation of her Federally protected

rights within the legal definition of fraud as well as the Defendants, the Ohio Veterinary Medical Licensing Board members." Doc. 2 ¶ 8. Similarly, plaintiff alleges that "all Defendants acted with malice and forethought as they continued and continued to pursue taking adverse actions against Plaintiff's license and depriving her of her Federally protected rights to due process, equal protection, trial by jury, petitioning the government for the redress of grievances, etc." Doc. 2 ¶ 10.

The challenge presented by this complaint is that for the most part, plaintiff makes broad legal conclusions that plaintiffs have engaged in some violation of her rights in the absence of factual allegations regarding *how* defendants have done so. For example, paragraph 24 of the complaint is comprised entirely of conclusions without supporting factual allegations:

> Plaintiff contends the Defendant attorneys in paragraph 23 have perverted the use of the courts, filed motions to dismiss with frivolous legal argument, moved for summary judgment without meeting requirements to do so, presented false information to the Courts in Ohio, disregarded the legal doctrine of stare decis [sic] in Ohio, intimated [sic] this Plaintiff, failed to justify the actual conduct of all pertinent parties above, as well as have jeopardized the recovery for damages done to this Plaintiff based on misapplied legal argument. Plaintiff is certain these Defendant attorneys are well acquainted with the laws in Ohio and requirements of Civil Rule 11.

Doc. 2 ¶ 24. In short, though it is clear from plaintiff's complaint that she believes she has been wronged by defendants, it is a challenge to piece together what they actually *did*. Plaintiff's allegations do not tell a clear story of what she claims happened.

Nonetheless, the complaint does include *some* allegations of specific action ascribed to most of the fifteen defendants. For the most part, these allegations accuse the defendants of 3 types of misconduct: 1) Intimidating plaintiff and threatening her with legal action; 2) ignoring legal arguments and facts presented by plaintiff and making false allegations and promoting alternate "fraudulent" legal arguments in judicial or disciplinary proceedings; and 3) refusing to investigate

or protect plaintiff from other defendants' actions.  Plaintiff's specific allegations regarding each defendant are further examined below.

## II. Standards of Review

### a. 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  When considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true.  Iqbal, 556 U.S. at 679; Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Twombly, 550 U.S. at 555-56.  Further, the pleadings of pro se plaintiffs "are held to less stringent standards than those prepared by attorneys, and are liberally construed when determining whether they fail to state a claim upon which relief can be granted." Martin v. Overton, 391 F.3d 710, 712 (6th Cir. 2004) (citing Haines v. Kerner, 404 U.S. 519, 520–521 (1972); Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991)).

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S. at 555, 557 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s]" devoid of

6

"further factual enhancements"); Papasan v. Allain, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." Twombly, 550 U.S. at 556 n.3. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679.

When the complaint does contain well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Though "[s]pecific facts are not necessary," Erickson, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," Twombly, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. Iqbal, 556 U.S. at 678-79; Twombly, 550 U.S. at 555-56. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

The parties have attached several documents to the motions, responses, and replies under consideration in this order. The analysis presented below relies only on the plaintiff's complaint. According to Rule 12(d) of the Federal Rules of Civil Procedure, "If, on a motion under Rule

12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." The parties have not conducted discovery and the analysis below does not consider matters outside of the pleadings.

    b. 12(b)(1)

Where a defendant raises the issue of lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss. DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir.2004); Moir v. Greater Cleveland Regional Transit Auth., 895 F.2d 266, 269 (6th Cir.1990).

Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. United States v. Ritchie, 15 F.3d 592, 598 (6th Cir.1994). A facial attack on subject matter jurisdiction goes to whether the plaintiff has properly alleged a basis for subject matter jurisdiction, and the trial court takes the allegations of the complaint as true. Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir.1990). A factual attack is a challenge to the factual existence of subject matter jurisdiction. No presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. Ritchie, 15 F.3d at 598; Moir, 895 F.2d at 269. Here, defendants are making a facial attack on plaintiff's complaint.

**III.    Analysis**

    a) The hearing officer: Marc E. Myers

Defendant Marc E. Myers argues that the claims against him must be dismissed because he is entitled to absolute quasi-judicial immunity, because plaintiff's claims are barred by the statute

of limitations, because plaintiff's allegations have not stated a federal cause of action, and because plaintiff's claims are barred by the waiver and immunity provisions of the Ohio Court of Claims Act. Doc. 15.

In her complaint, Plaintiff includes a handful of allegations that are specific to defendant Myers. She alleges that

> Defendant Marc Myers was contracted as the Hearing Examiner to hear and make recommendations to the OVMLB regarding allegations of misconduct against Plaintiff, Dr. Terrie Sizemore RN DVM. . . . Mr. Myers ignored all legal argument provided by this Plaintiff that was truthful and made recommendation to punish this Plaintiff's license without the legal authorities to support any decisions unfavorable to this Plaintiff. Defendant Mr. Myers ignored all facts below and within the . . . hearing on July 20, 2006, he did not allow this Plaintiff to bring forth evidence to support her innocence.

Doc. 2 ¶ 15. In addition to serving as the hearing examiner, plaintiff alleges that after the hearing, defendant Myers "filed his report and recommendations with the OVMLB advising them falsely and without facts or law to support that this Plaintiff had violated her professional code of conduct and advised the OVMLB to draft formal charges against this Plaintiff for the first two accusations [against her]." Doc. 2 ¶ 47. Plaintiff's allegations regarding defendant Myers are limited to his actions as the hearing examiner and his subsequent report.

Defendant Myers argues that, as a hearing officer, he is entitled to quasi-judicial immunity. "The doctrine of judicial immunity is justified 'by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability.'" Id. at 1115 (quoting Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435 (1993). Judicial Immunity protects "a sweeping range of judicial actions." Id.

The "judicial acts" protected by absolute judicial immunity are broadly defined. Whether an action is taken in a judicial capacity "turns on two factors: (1) looking to the nature of the act

9

itself, whether the act is a 'function normally performed by a judge'; and (2) regarding the expectations of the parties, whether the parties 'dealt with the judge in his judicial capacity.' . . . . [E]ven if a particular act is not a function normally performed by a judge, we are directed to 'look to the particular act's relation to a general function normally performed by a judge.'" Barnes v. Winchell, 105 F.3d 1111, 1116 (6th Cir. 1997) (quoting Mireles v. Waco, 502 U.S. 9, 12-13 (1991)).

Though not a judge, an officer at an administrative hearing is entitled to quasi-judicial immunity for judicial acts taken within the jurisdiction of that role:

> Quasi-judicial absolute immunity is available to "state officials subject to restraints comparable to those imposed by the Administrative Procedure Act and performing adjudicatory functions in resolving potentially heated controversies." . . . Quasi-judicial immunity should be granted to state officials when "(1) their positions are akin to that of judges; (2) the potential for vexatious lawsuits is great; and (3) enough safeguards exist to protect [the complainant's] constitutional rights."

Purisch v. Tenn. Tech. Univ., 76 F.3d 1414 (6th Cir. 1996) (quoting Watts v. Burkhart, 978 F.3d 269, 273, 278 (6th Cir. 1992)).  Here, defendant Myers's role as a hearing officer was "akin to that of judges." He independently took evidence, applied the law, and rendered a recommendation to the OVMLB. The potential for dissatisfaction and accompanying lawsuits is great–Myers's role was one in which he was called on to make disciplinary decisions implicating members of a profession. And, meaningful safeguards were available in the form of multiple layers of review and appeal. Plaintiff had the opportunity to oppose defendant Myers's recommendation before the Board partially adopted it. She appealed the Board's decision to the common pleas court, and she appealed her dismissal from the common pleas court to the Tent District Court of Appeals.

Because defendant Myers is entitled to absolute quasi-judicial immunity, the Court need not consider his other arguments. Defendant Myers's motion to dismiss (doc. 15) is GRANTED.

### b) The state-employee defendants involved only in the original OVMLB action and plaintiff's

appeals prior to the Court of Claims action

For six of the remaining defendants, the plaintiff has only alleged facts relating to her initial OVMLB hearing and her appeals to that hearing to the Board, the Franklin County Court of Common Pleas, and to the Ohio Court of Appeals. Each of these six defendants is also an official or employee of the State of Ohio. For these six defendants, plaintiff alleges that: Defendant Heather Hissom Coglianese was "the Executive Secretary and the Executive Directer of the [OVMLB] and . . . created and signed documents with false allegations of misconduct against Plaintiff and posted embarrassing and false and defamatory statements against Plaintiff . . . ." Doc. 2 ¶ 12. Defendant Barry McKew was an assistant attorney general and "knew the charges brought against this Plaintiff were false and he continued to force her to a hearing and . . . . intimidated this Plaintiff by making veiled and overt threats regarding license revocation to this Plaintiff without legal grounds to do so." Doc. 2 ¶ 14. Defendants Janet Small, Darrell Gitz, David Koncal, and Renee Jessen "were members of the OVMLB that promulgated adverse action against Plaintiff's veterinary license . . . ." Doc. 2 ¶ 18. Plaintiff makes no allegations against any of these defendants beyond their alleged wrongful participation in the OVMLB action against her, and her direct appeals of that action. Plaintiff has previously put this same set of actions before the Ohio Court of Claims.

In Ohio, a plaintiff seeking to sue an officer or employee of the state, must first file suit in the Ohio Court of Claims, which has "exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity . . . ." Ohio Rev. Code § 2743.02(F). "[F]iling a civil action in the court of claims results in a complete waiver of any cause of action, based on the same act or omission, that the filing party has against any officer or employee . . . ." Ohio Rev. Code § 2742.02(A)(1). This waiver of suit against state employees remains in effect

11

unless and until the Court of Claims determines that the employee is not entitled to immunity. Id. Where a plaintiff files suit in the Court of Claims and her case is dismissed without that court determining that the acting employees are not immune from suit, all causes of action against those employees, "based on the same act or omission" are waived. Id. The plaintiff may not file state or federal claims based on the acts at issue in the Court of Claims action in state or federal court. Leaman v. Ohio Dep's of Mental Retardation & Dev. Disabilities, 825 F,2d 946, 952 (6th Cir. 1987) (en banc).

Here, plaintiff alleges that following her voluntary dismissal of her direct appeal of the OVMLB action, doc. 2 ¶ 55, and her dismissal of a claim "allegaing violations of 42 USC 1983 in substance" in the Franklin County Court of Common Pleas, she filed suit in the Court of Claims seeking a determination that the state employees against whom she wished to proceed were not immune from suit. Doc. 2 ¶ 62. Plaintiff does not allege that the Court of Claims determined that the defendants were not immune from suit, but instead argues that she was not required to obtain an immunity determination before proceeding against the state employees. Doc. 2 ¶ 63. This argument is contrary to Ohio law and Sixth Circuit precedent.

Plaintiff's allegations against defendants Coglianese, McKew, Small, Gitz, Koncal, and Jessen are only related to the OVMLB action and her appeal of that action. When she filed in the Court of Claims, plaintiff waived any cause of action based on these same actions. Because plaintiff has not received an immunity determination from the Court of Claims, that waiver remains in effect. The motion to dismiss (doc. 16) with respect to claims against defendants Coglianese, McKew, Small, Gitz, Koncal, and Jessen is GRANTED.

 c) Director of the OVMLB: Theresa Stir

For the most part, plaintiff's allegations against defendant Theresa Stir are similar to her allegations against the six defendants described in section b, above. Plaintiff alleges that defendant Stir was the Director of the OVMLB, and that in the couse of the OVMLB disciplinary action she "issued a fraudulent 'dismissal of charges' letter" and "threatened [plaintiff] with contacted [sic] law enforcement official without providing legal justification to do so." Doc. 2 ¶ 19. Stir also allegedly "threaten[ed] and frighten[ed] this Plaintiff by writing and ordering Plaintiff not to contact publicly advertised veterinarians on the OVMLB." Doc. 2 ¶ 20. These allegations against a state employee are based on the same acts and omissions as plaintiff's Court of Claims action, in which she did not receive an immunity determination. As described above, plaintiff has waived any cause of action based on these actions.

Plaintiff makes one allegation against defendant Stir that could go beyond the actions on which the Court of Claims action was based. She alleges that Stir "provided the Tenth District Court of Appeals, Mandamus action . . . a fraudulent affidavit by providing 'minutes to an OVMLB' meeting that were false and did not make statements she claims they made." Doc. 2 ¶ 19.

Claims based on this allegation may not have been waived by plaintiff's Court of Claims action. However, though they could represent an attempt to state a claim for fraud, plaintiff's allegations are insufficient. Under Ohio law, the elements of a fraud claim, which must be plead with particularity, are: a material representation "made falsely, with knowledge of its falsity, . . . with the intent of misleading another into relying upon it, . . . justifiable reliance upon the representation or concealment, [and] a resulting injury . . . ." Casey v. Reidy, 906 N.E.2d 1139, 1143 (Ohio Ct. App. 2009). Though plaintiff generally alleges that defendant Stir provided "a fraudulent affidavit," most of the elements of a fraud claim are unsupported by plaintiff's allegations. In particular, she

13

does not allege that she (or anyone else) reasonably relied on the affidavit, or that she suffered any injury because of defendant Stir's allegedly fraudulent actions. For the reasons stated above, the motion to dismiss (doc. 16) with respect to claims asserted against defendant Stir is GRANTED.

### d) Defendants who allegedly failed to investigate plaintiff's claims or to protect plaintiff from other defendants: Charles, Gibbs, Winn

Plaintiff's allegations against several defendants claim only that they failed to investigate plaintiff's claims against other defendants, or failed to protect plaintiff from the actions of other defendants. For example, plaintiff alleges that defendant

> Tracy Winn was acting Director of Boards and Commissions and was cc'd on all documents relating to Plaintiff's concerns about the OVMLB's actions and conduct in this action and failed to respond in any way to the Plaintiff's concerns or stop or prevent the OVMLB's actions against the Plaintiff that deprived her her [sic] Federally protected rights when it was in her ability and authority to do so.

Doc. 2 ¶ 21. Absent from plaintiff's allegations regarding defendant Winn is any allegation that Winn had a duty or legal responsibility to do what plaintiff claims she should have. Without a duty to take an action, it is unclear how plaintiff believes that defendant Winn violated any law. Plaintiff has failed to state a claim on which relief may be granted against defendant Winn.

Similarly, plaintiff has failed to state a claim against her former state representative, Bob Gibbs. Though plaintiff alleges that she asked defendant Gibbs to assist her and that he declined to do so, she does not allege that he had any duty or legal responsibility towards her that he violated. See doc. 2 ¶ 17. Plaintiff has failed to state a claim on which relief may be granted against defendant Gibbs.

Plaintiff's allegations go one step farther against defendant Thomas Charles. Plaintiff claims that Charles was the Ohio Inspector General, that she alerted him to the OVMLB's alleged wrongful

action, and though plaintiff alleges that Charles was required by Ohio law and his job description to investigate plaintiff's claims, he declined to do so. Doc. 2 ¶ 16. Indeed, the Ohio Insepctor General is required to "[r]eceive complaints . . . alleging wrongful acts and omissions, determine whether the information contained in those complaints allege facts that give reasonable cause to investigate, and, if so, investigate to determine if there is reasonable cause to believe that the alleged wrongful act or omission has been committed or is being committed by a state officer or state employee." Ohio Rev. Code § 121.42(B). Plaintiff does not allege that defendant Charles refused to receive her complaint, but that upon receipt, he did not investigate or protect her from the OVMLB. Doc. 2 ¶ 16. It was within defendant Charles's discretion to determine whether an investigation was warranted and plaintiff has not alleged that Charles acted in bad faith or with a malicious purpose. For that discretionary determination, soundly within the scope of his official capacity, defendant Charles is entitled to qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Plaintiff does not allege that defendant Charles violated any of her federal statutory or constitutional rights, nor that such right was clearly established. Furthermore, even construing plaintiff's complaint liberally, it is not apparent how, by declining to take the investigative and prosecutorial actions urged by the plaintiff, he could have violated any federal right.

For the reasons stated above, the motion to dismiss (doc. 16) with respect to claims asserted against defendants Winn, Gibbs, and Charles is GRANTED.

e) The Ohio Attorney General

Defendant alleges that "[a]t some times pertinent to this action, Defendant Marc Dann was the Ohio Attorney General . . . . Dann's name is on each and every document prepared by AAG Barry McKew rendering him a joined party to this action. Defendant Marc Dann did not prevent the deprivation of Federally protected rights . . . ." Doc. 2 ¶ 13. Defendant Dann is entitled to qualified immunity. Plaintiff's allegations that defendant Dann's name appeared on documents prepared by his assistant attorneys general and that he did not prevent the alleged deprivation of her rights do not state a claim that defendant Dann violated any specific right held by plaintiff, or that such right was clearly established. The motion to dismiss (doc. 16) with respect to claims asserted against Defendant Dann is GRANTED.

f) Assistant Attorneys General Epstein, Adair, and Worly

Plaintiff alleges that defendants Epstein, Adair, and Worly "were/are attorneys with the Ohio Attorney General's office . . . ." Doc. 2 ¶ 23. She alleges that these three assistant attorneys general conspired to deprive her of federal rights, provided "false and misleading information to the Courts in Ohio as this Plaintiff attempted to litigate," and wrongfully provided legal representation to other defendants who had acted outside the scope of their employment. Doc 2 ¶ 23.

No allegations in plaintiff's complaint support her claim of a conspiracy. She alleges no facts from which any plausible inference could be drawn that defendants Epstein, Adair, or Worly agreed, explicitly or tacitly, to deprive plaintiff of her rights. Her allegations against these plaintiffs are, for the most part, limited to claims that they presented allegedly false facts or incorrect legal arguments to Ohio Courts. She does not allege an agreement or facts from which an agreement could be inferred.

Plaintiff does allege that each of the assistant attorney general defendants somehow acted

16

improperly while representing clients before Ohio Courts. For example, plaintiff claims that defendant Epstein made false legal claims before an Ohio court. Doc. 2 ¶¶ 59-61. She alleges that defendant Adair "filed a motion to dismiss and based her legal argument on misapplied statutes as well as ignored the requirement to exhaust all administrative remedies prior to being permitted an action for damages for acts of State agencies." Doc. 2 ¶ 63. Similarly, plaintiff alleges that before the Court of Appeals defendant Worly "presented approximately 19 false statements in one brief to the Court and about 21 false statements in another brief to the Court . . . ." Doc. 2 ¶ 65. Plaintiff claims that "[t]his action is taken under 42 USC 1983, 1985, 1986, and 1988." Doc. 2 ¶ 3. Only Section 1983, which prohibits deprivations of federal rights while acting under color of state law is plausibly at issue here.[2] Yet, from plaintiff's allegations, it is not apparent what federal right defendants Epstein, Adair, and Worly could have deprived her of. See doc. 2 ¶ 23 (alleging that defendants "have conspired . . . to deprive her of her Federally protected rights . . . " without stating of which rights she has been deprived). Plaintiff generally invokes rights under the Fourteenth Amendment, the right to petition the government, the right to trial by jury, and rights to "reputation, employment, due process, and equal protection." Doc. 2 ¶¶ 5, 6. Yet, allegations that attorneys misstated facts or legal arguments do not, alone, support violations of any of these rights. Plaintiff's allegations appear directed more towards defendants' representation of their clients as attorneys. Such allegations are beyond the jurisdiction of this court. See State ex rel. Buck v. Maloney, 809 N.E.2d 20, 22 (Ohio 2004).

---

[2] Section 1985 requires a conspiracy, which, as discussed above, is unsupported by plaintiff's allegations. Section 1986 provides an action against those who have knowledge of a Section 1985 conspiracy and the power to prevent it. Plaintiff's allegations do not support either the existence of a conspiracy, or that defendants Epstein, Adair, or Worly had knowledge of any such conspiracy. Finally, Section 1988 does not provide plaintiff with any additional cause of action.

17

Finally, plaintiff challenges the propriety of the assistant attorneys general defendants' representation of their clients. Section 109.362 of the Ohio Revised Code requires the attorney general to conduct an investigation prior to representing a state employee or official, and that this investigation must determine whether the employee acted "manifestly outside the scope of his employment or official responsibilities, with malicious purpose, in bad faith, or in a wanton or reckless manner . . . ." If the investigation determines that the employee did so, the attorney general must decline to represent the employee or official. Ohio Rev. Code § 109.362(A). Plaintiff alleges that "[i]t is inconceivable that parties acting outside their jurisdiction and violating the law and known Supreme Court of Ohio rulings and bringing false charges against an innocent party, and committing fraud, etc, could in any way have acted within the scope of their employment." Doc. 2 ¶ 23. The essence of plaintiff's claim is that because she alleges that defendants have wronged her, they could not possibly have acted within the scope of their employment. She alleges no facts from which any reasonable inference could be drawn that defendants' determination that their clients acted within the scope of their employment *caused* the deprivation of any clearly established right held by plaintiff. Defendants are entitled to qualified immunity from these allegations. The motion to dismiss (doc. 16) with respect to claims asserted against Defendants Epstein, Adair, and Worly is GRANTED.

**IV.    Conclusion**

Based on the foregoing reasons, the motions to dismiss (docs. 15, 16) are GRANTED. The clerk shall enter final judgment in favor of the defendants dismissing plaintiff's complaint with prejudice.

IT IS SO ORDERED.

                                              S/ James L Graham
                                              James L. Graham
                                              UNITED STATES DISTRICT JUDGE

Date: May 2, 2013